Slip Op 16 - 89

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| LINYI CITY KANGFA FOODSTUFF DRINKABLE CO., LTD., and ZHANGZHOU GANGCHANG CANNED FOODS CO., LTD., Plaintiffs, v. UNITED STATES, Defendant, and MONTEREY MUSHROOMS, INC., Defendant-Intervenors. | Before: R. Kenton Musgrave, Senior Judge Court No. 15-00184 |

**OPINION**

[Sustaining fifteenth administrative review of antidumping duty order on certain preserved mushrooms from the PRC.]

Decided: September 21, 2016

    *Lizbeth R. Levinson* and *Ronald M. Wisla*, Kutak Rock LLP, of Washington, DC, for the plaintiff.

    *Justin R. Miller*, Senior Trial Counsel, U.S. Department of Justice, Civil Division, International Trade Field Office, of New York, NY, for the defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia McCarthy*, Assistant Director. Of Counsel on the brief was *Shelby M. Anderson*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

    *Michael J. Coursey* and *John M. Herrmann*, Kelly Drye & Warren LLP, of Washington, DC, for the defendant-intervenors.

Musgrave, Senior Judge: The plaintiffs, Linyi City Kangfa Foodstuff Drinkable Co. Ltd. ("Kangfa") and Gangchang Canned Foods Co., Ltd. ("Gangchang"), exporters of subject merchandise from the People's Republic of China ("PRC"), contest aspects of *Certain Preserved Mushrooms from the PRC: Final Results of Antidumping Duty Administrative Review; 2013-2014; and Partial Rescission of Review*, 80 Fed. Reg. 32355 (June 8. 2015) ("*Final Results*"), public document ("PDoc") 142, and accompanying final results decision memorandum dated June 1, 2015, PDoc 137 ("*IDM*"), as compiled by the U.S. International Trade Administration of the U.S. Department of Commerce ("Commerce"). Specifically, the plaintiffs challenge Commerce's selection of surrogate values for labor, for steam coal, and for glass jars and metal caps. In the interest of brevity this opinion will presume general familiarity with Commerce's non-market economy ("NME") surrogate valuation methodology.

*Background*

The plaintiffs were interested parties to the proceeding and their standing here is uncontested. Initiated pursuant to requests from the petitioner and respondent parties,[1] the *Final Results* concern the fifteenth administrative review, covering the period February 1, 2013 to January 31, 2014 ("POR"), of the underlying antidumping duty order *sub nom. Notice of Amendment of Final Determination of Sales At Less Than Fair Value and Antidumping Duty Order; Certain Preserved Mushrooms from the PRC*, 64 Fed. Reg. 8308 (Feb. 19, 1999).

For the proceeding, the plaintiffs were selected as mandatory respondents, and both cooperated with Commerce thereat in responding to all information requests. Commerce determined

---

[1] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 79 Fed. Reg. 18262, 18269 (Apr. 1, 2014), PDoc 6.

preliminary antidumping duty rates of 78.69% and 102.87% for Kangfa and Gangchang, respectively. *Certain Preserved Mushrooms from the PRC: Preliminary Results of Antidumping Duty Administrative Review; 2013-2014*, 79 Fed. Reg. 71746 (Dec. 3, 2014) ("*Preliminary Results*"), PDoc 152. For the *Final Results*, the margins were 75.67% and 99.71%, respectively. *Final Results*, 80 Fed. Reg. at 32357. The plaintiffs then timely commenced this suit, *see* ECF Nos. 7 (July 2, 2015) & 8 (July 17, 2015), and liquidation of entries covered by the POR are currently suspended pursuant to consented-to enjoinder, *see* ECF No. 10. The matter being assigned to the undersigned shortly thereafter, the plaintiffs' motion for judgment was taken under advisement. *Cf.* ECF No. 45.

*Jurisdiction and Standard of Review*

Commerce's final results are to be sustained unless they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. §l516a(b)(1)(B). In practice, this means that the record must contain sufficient evidence to substantiate the conclusion, finding, or inference drawn thereon or therefrom. *See, e.g., PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) ("more than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1951).

*Discussion*

I

Turning to the surrogate valuation of labor for the *Final Results*, during the review proceeding the plaintiffs described their production of subject merchandise as a two-stage process. In the first stage, two affiliates of the plaintiffs grew fresh mushrooms, and in the second stage the

plaintiffs processed the fresh mushrooms into subject merchandise, *i.e.*, preserved mushrooms. *See* PDoc 49 at D-3 to D-7; PDoc 48 at D-2 to D-3. The plaintiffs each separately reported the amounts of indirect and direct labor at both stages of the production process. *See* CDoc 19 at Exhibits D-3 and D-4 (reporting factors of production for "Fresh Mushroom" and "Canned Mushroom"); CDoc 17 at Exhibit D-3 (describing factors, and separately identifying direct and indirect labor consumed in the fresh and canned mushroom processing stages) and Exhibits D-4-1 and D-4-2 (providing factors of production of "Fresh Mushroom" and "Canned Mushroom").

In the *Preliminary Results*, Commerce valued labor using the only surrogate value on the record. In particular, Commerce derived a surrogate value from the line item "Manufacture of Food Products and Beverages" of Chapter 6A of the International Labor Organization (ILO) Yearbook of Labor Statistics, which is Commerce's preferred valuation source for labor. *See* PDoc 115 at 8, 122 at 2-3, 123 at 2-3; *Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production: Labor*, 76 Fed. Reg. 36092, 36092-94 (June 21, 2011) ("*Labor Methodologies*") (announcing intention to use ILO Yearbook Chapter 6A data "as its primary source of labor cost data in NME antidumping proceedings," as it "reflects all costs related to labor including wages, benefits, housing, training, *etc*.").

As in their administrative case brief, the plaintiffs here argue that Commerce should have used two different surrogate values to value labor. While they agree it was appropriate to value their canning labor using Chapter 6A data, they argue Commerce should have used data from Chapter 5A to value the labor consumed in the comparatively more labor-intensive process of growing mushrooms. *See* Pls.' Br. at 8-11. According to the plaintiffs, it is "self-evident" that

Chapter 5A data are "more specific to the direct and indirect labor factors of production reported by the growers for the cultivation of fresh mushrooms" than Chapter 6A data for manufacturing food and beverage products. *Id*. at 9. In relying on Chapter 6A data, the plaintiffs contend, Commerce not only failed to follow its own policy of using industry-specific labor rates, resulting in vastly overinflated labor cost due to the proportionally larger number of labor hours required in the mushroom growing stage, *id*. at 9-10 (citing *Labor Methodologies*), it relied on a "surrogate value that has no rational relationship to agricultural labor inputs", *id*. at 11.

        The problem with the argument is that the ILO Chapter 5A were not made a part of the record. The plaintiffs' reply emphasizes that surrogate values must be based on the "best information available" and not simply on "the best information available on the record submitted by the parties". Pls' Reply at 2. The plaintiffs thus chastise Commerce for not gathering such data (for which they had argued in their administrative case brief) because gathering such data would have involved "only a slight modicum of effort". *Id*. at 3. Ultimately, they contend that for Commerce to act affirmatively to place similar such information on the record of *QVD Foods Co., Ltd.*, 658 F.3d 1318, 1321 (Fed. Cir. 2011), *id*. at 5, but not do so in this instance is arbitrary and capricious. *See id.* at 5-7.

        Insofar as *QVD Foods* allows for the possibility of "unfairness or impropriety in Commerce's decision to submit [documents] into the record"[2], the plaintiffs make a valid point. However, as in that appellate opinion, the court here cannot discern arbitrariness in Commerce's "inaction" of not placing relevant Chapter 5A data on the record of the proceeding at bar, and *QVD*

---

    [2] *QVD Foods*, 658 F.3d at 1324.

*Foods* cannot be read as requiring Commerce to act to ferret out "necessary" information for the record because regardless of the fact that "Commerce has authority to place documents in the administrative record that it deems relevant, 'the burden of creating an adequate record lies with [interested parties] and not with Commerce.'" *QVD Foods*, 658 F.3d at 1324, quoting *Tianjin Machinery Import & Export Corp. v. United States*, 16 CIT 931, 936, 806 F. Supp. 1008, 1015 (1992).[3] *Cf. American Tubular Products, LLC v. United States*, 38 CIT ___, Slip Op. 14-116 (Sep. 26, 2014) ("*American Tubular I*") at 28 (rejecting notion that Commerce must "hunt for surrogates when relevant data are already on the record"), *appeal docketed*, Fed. Cir. 16-1127 (Oct. 27, 2015).

      Furthermore, as the defendant argues, the plaintiffs' assertions appear to rest on the unsubstantiated assumption that the Chapter 5A and the Chapter 6A data are otherwise equal in all relevant respects. *See* Def's Resp. at 10-11, citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("[i]t is well established that speculation does not constitute substantial evidence"), quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed. Cir. 2002) (Dyk, J., dissenting), *Jinxiang Yuanxin Import & Export Co. v. United States*, 39 CIT ___, ___, 71 F. Supp. 3d 1338, 1351 (2015) (quoting same), and *American Tubular Products, LLC v. United States*, 39 CIT ___, ___, Slip Op. 15-98 at 17 (Aug. 28, 2015) ("*American Tubular II*") ("[s]peculative claims that are plausible in theory but unsupported in fact do not make the cut") (citations omitted). *Cf. Labor Methodologies*, 76 Fed. Reg. at 36093 (noting that data from Chapter 5 of the ILO Yearbook, in particular, Chapter 5B, reflect "only direct compensation and bonuses"). Commerce explained in its decision memorandum that its stated preference is to value labor using

---

[3] *See also Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("[t]he burden of production should belong to the party in possession of the necessary information").

Chapter 6A data because those values "best capture certain direct and indirect labor costs (*e.g.*, bonuses and gratuities, meals, and other payments in kind, workers' housing, social security payments, training costs, other miscellaneous elements of labor cost, and taxes)." *IDM* at 11.  In any event,[4] in the absence of Chapter 5A information on the record, it cannot support concluding that Chapter 5A data are more specific to the labor associated with the growing of fresh mushrooms.

II

Similarly, the plaintiffs argue that Commerce erred in choosing surrogate values on the record when valuing inputs of glass jars and metal caps.  In the underlying review, they reported consuming glass jars and caps in manufacturing some of the subject merchandise exported to the United States during the POR.[5]  In both its preliminary and final results, Commerce valued the glass jars Commerce using GTA data for Colombian imports under HTS 7010.90 (*i.e.*, "Carboys, Bottles, Flasks, Jars, Pots, Vials, and Other Containers, of Glass, Of A Kind Used For The Conveyance or Packing Of Goods; Preserving Jars") and it valued the caps using GTA data for Colombian imports under HTS 8309.90 (*i.e.*, "Stoppers, Caps and Lids Nesoi (Not Crown), Capsules For Bottles, Bungs, Seals And Other Packing Accessories, And Parts Thereof, Of Base Metal").  *See* PDoc 70 at Exs.

---

[4]  The plaintiffs state only that Chapter 5A contains data related to "monthly wages for workers employed in the agricultural, hunting, and fishing sector", which are lower than the Chapter 6A labor cost data, and appear to have no rejoinder to the defendant's contention that that point does not adequately illuminate how Chapter 5A's description more closely parallels the labor experience of its affiliated growers than a category for the "Manufacture of Food Products", *i.e.*, the Chapter 6A data relied upon by Commerce.  *Cf.* Pls.' Br. at 8 & Def's Resp. at 11 *with* Pls' Reply at 2-6.

[5]  *See* CDoc 70 at Exs. SQ2-1 and SQ2-4 (showing columns for glass jars and glass jar caps); CDoc 73 at Exs. SQ2-3 and SQ2-4 (showing CONNUMs associated with glass jars and glass caps).

13 & 14; PDoc 115 (surrogate values for the prelim. results at 6). These values, submitted by the petitioner, were apparently the only sources on the record for such valuation. *See IDM* at 13-14.

In their administrative brief, the plaintiffs argued that Commerce should have relied on jar-specific and size-specific surrogate values applicable to covered glass jars "with a capacity greater than 150 millimeters and less than 330 millimeters" as set forth in the Tariff Schedules of Ecuador and Bulgaria. Respondents' Case Brief at 22-23. Alternatively, the plaintiffs referred Commerce to the precise HTS numbers as used in the import statistics of South Africa. The plaintiffs contend here, as in their administrative case brief, that the surrogate values on which Commerce relied were aberrantly high (and in the case of glass jars, insufficiently specific) for surrogate valuation of their inputs. *See* Pls' Br. at 17-22.

With respect to the first argument, the plaintiffs do not adequately address the defendant's point that the record contained no other valuation sources. *See IDM* at 13-14. The plaintiffs repeat the similar argument, *supra*, that Commerce had every opportunity to calculate the most accurate antidumping margins possible based on the surrogate values the plaintiffs identified in their case brief but "flouted" its obligation on the ground that the numerical values for these surrogate values were absent from the administrative record. Pls' Reply, referencing *IDM* at 10. However, as discussed above, Commerce complied with its statutory obligation, and necessarily relied on the "best available information" for valuing glass jars and caps when it relied on the only available information on the record. *See* 19 U.S.C. §1677b(c)(1); *see also Jacobi Carbons AB v. United States*, 619 F. Appx. 992, 1002 (Fed. Cir. 2015) ("*Jacobi Carbons II*"). (noting that the best available information is limited to the record before the agency, not a hypothetical record). The law

does not require Commerce to build the record on the plaintiffs' behalf. *E.g.*, *QVD Food*, 658 F.3d at 1324. The plaintiffs attempt to distinguish *QVD Food* as actually supporting their own position (because Commerce itself in that case placed a possibly "appropriate source of information for valuing whole pangas fish" on the record) but the attempt is unavailing for the reasons discussed above. The plaintiffs also attempt to distinguish *American Tubular I* on the ground that the parties thereto had not briefed alternative choices for surrogate values as the plaintiffs here did before Commerce, but it cannot be conclude therefrom that Commerce's "inertia" on gathering the data that would "complete" the plaintiffs' arguments (in the form of the factual record support therefor) was arbitrary or capricious for the same reasons stated above.

    The plaintiffs also assert that the surrogate value on which Commerce relied was aberrantly high. Commerce's practice when confronted with a claim that data are aberrational is to compare the allegedly aberrant data with the data from other countries found by Commerce to be "equally" economically comparable to the PRC. *See*, *e.g.*, *Citric Acid from the PRC*, 80 Fed. Reg. 77323 (Dec. 14, 2015) (final admin. review), and accompanying issues and decision memorandum at cmt. 8. Commerce's position is that there were no such comparative data on this record that would have enabled concluding that the data on which it relied were aberrant. In lieu thereof, the plaintiffs argue that the values used by Commerce resulted in a scenario whereby the price of glass jars and caps exceeded the average price of the merchandise sold in the United States. *See* Pls.' Br. at 17-19. The plaintiffs argue that it is inconceivable that a manufacturer in a market economy surrogate country would package its product in a container whose value exceeds the gross sales price

of the item, and that Commerce's methodology produces this "absurd" result that "def[ies] commercial reality." *See id.* at 19.

The problems with the argument are twofold: (1) it assumes that the plaintiffs' U.S. price can be regarded, from other evidence in the record and not in the abstract, as approximating a "fair" market price that recoups production costs, and (2) it does not clarify why, in the absence of data from other countries found be equally economically comparable to the PRC, Commerce's reliance upon the only surrogate value data of record for valuing the glass jars and metal caps can be concluded, necessarily, as producing an "absurd" result in this instance. The Court of Appeals for the Federal Circuit recently clarified that while commercial reality is a "reliable guidepost[ ] for Commerce's determinations," that concept "must be considered against what the antidumping statutory scheme demands." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1343 (Fed. Cir. 2016) (citation omitted). The statute "demands" that Commerce calculate normal value by valuing the factors of production with the "best available information" regarding the values of those factors in a market economy country. *See* 19 U.S.C. §1677b(c)(1). While "*the emphasis* should be on economic reality",[6] Commerce appears to have satisfied that statutory obligation in this instance, as set forth above.

The plaintiffs' last argument on this issue is that the surrogate value for glass jars is insufficiently specific. It is undisputed that the HTS category on which Commerce relied in the *Final Results* includes the merchandise being valued (*i.e.*, glass jars), but, citing to statements in their administrative case brief, the plaintiffs assert that the HTS schedules of South Africa, Ecuador, and

---

[6] *United States v. Eurodif S.A.*, 555 U.S. 305, 317-18 (2009), quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (italics added).

Bulgaria offer greater specificity insofar as they contain size-specific values. *See* Pls.' Br. at 20-21. Commerce responds, and the court must agree, that the plaintiff's statements in their case brief appear unsupported by record evidence, and Commerce must make its determinations based on the record before it. *See Jacobi Carbons II*, 619 F. Appx. at 1002. The record in this case contains no data from South Africa, Bulgaria, or Ecuador, and therefore the plaintiffs' reliance on cases where Commerce was confronted with alternative valuation options from the record is unavailing. *See*, *e.g.*, Pls.' Br. at 20, citing *Jinan Yipin Corp. v. United States*, 35 CIT ___, ___, 800 F. Supp. 2d 1226, 1296 (2011) (inappropriate to rely on "basket" HTS provision import when more representative surrogate data are available). The plaintiffs' arguments thus do not persuade that Commerce erred in according weight to the data relevant to the primary surrogate country when making its surrogate value decisions. *See* 19 C.F.R. § 351.408(c)(2); *see also Jacobi Carbons AB v. United States*, 38 CIT ___, ___, 992 F. Supp. 2d 1360, 1376 (2014).

### III

Lastly, the plaintiffs contest the surrogate value that Commerce applied when valuing the steam coal consumed during both the growing and canning production process. *See* Pls.' Br. at 11-16. In the *Preliminary Results*, Commerce valued all reported coal inputs using Colombian GTA import data for "Bituminous Coal, Not Agglomerated," which describes HTS 2701.12. *See* PDoc 115 (surrogate values for the prelim. results at 7). The plaintiffs did not comment on this issue in their joint case brief, and Commerce's regulatory requirement is that case briefs must "present all arguments that continue in the submitter's view to be relevant to [Commerce's] final determination or final results". *See* 19 C.F.R. § 351.309(c)(2). The defendant emphasizes that at no point in the

underlying review did the plaintiffs provide any indication of their position with respect to the proper valuation of coal, nor did they submit suggested surrogate values on the record of the review. Accordingly, the defendant explains, in the *Final Results* Commerce continued to rely upon the same value as that of the *Preliminary Results* when valuing plaintiffs' reported coal inputs.

The plaintiffs now contend that the value used for coal was insufficiently specific and aberrantly high, and they assert that the correct HTS category for steam coal is either HTS 2701.19, a category they contend reflects steam coal, or HTS 2701.11, a category for anthracite coal. *See* Pls' Br. at 12-13. However, once again, the only two surrogate values on the record are those specific to bituminous and anthracite coal. *See* PDoc 72 at Ex. 19. Aside from the fact that one of the two suggested values is not on the record of the review, the defendant argues that this is the first time the plaintiffs have raised these arguments and that they should not be accorded consideration because they were not raised before Commerce in the underlying review.

Pursuant to 28 U.S.C. § 2637(d), the court "shall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's antidumping duty determinations. The doctrine of exhaustion provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (citation and internal quotation marks omitted). The statutory exhaustion requirement concurrently protects administrative agency authority and promotes judicial efficiency, *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007), and it is well-settled that "[a] reviewing court usurps the agency's function when it sets aside an agency determination upon a ground not theretofore presented and deprives the

[agency] of an opportunity to consider the matter, make its ruling, and state the reason for its action." *Rhone Poulenc, Inc. v. United States*, 13 CIT 218, 226, 710 F. Supp. 341, 348 (1989), quoting *United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37 (1952) (internal quotation marks omitted; *Rhone* court's bracketing), *aff'd*, 899 F.2d 1185 (Fed. Cir. 1990). Further, the court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies before . . . Commerce in trade cases." *Corus Staal*, 502 F.3d at 1379 (citations omitted); *accord Clearon Corp. v. United States*, 35 CIT ___, ___, 800 F. Supp. 2d 1355, 1362 (2011); *Fuwei Films (Shangdong) Co. v. United States*, 35 CIT ___, ___, 791 F. Supp. 2d 1381, 1384 (2011).

Furthermore, none of the limited exceptions to the exhaustion doctrine appear to apply in this case, *i.e.*: (1) where exhaustion would be a useless formality or futile; (2) intervening legal authority might have materially affected the agency's actions; (3) the issue involves a pure question of law not requiring further factual development; (4) where clearly applicable precedent should have bound the agency; or (5) where the party had no opportunity to raise the issue before the agency. *See SeAH Steel Corp. v. United States*, 35 CIT ___, ___, 764 F. Supp. 2d 1322, 1325-26 (2011) (citation omitted). The plaintiffs cannot establish that it would have been futile for them to present their arguments to Commerce during the review, as the futility exception is a narrow one in that parties must demonstrate that they "would be required to go through obviously useless motions in order to preserve their rights." *Corus Staal*, 502 F.3d at 1379 (citations and internal quotation marks omitted). If the plaintiffs had raised their arguments before Commerce in the proceeding, the agency would have addressed those arguments in the first instance, as it did with respect to every other surrogate value disputed by plaintiffs in their case brief. Additionally, despite the plaintiffs'

contention otherwise, this issue does not require resolution of a pure question of law. The plaintiffs contend Commerce's decision was unsupported by substantial evidence, *see* Pls' Br. at 11-16, and in their reply they contend "Commerce did not cite to any evidence in the record that would have led it to believe that steam coal was the equivalent of bituminous coal." Pls' Reply at 7. That was not the issue before Commerce, the issue was the availability of the evidence on the record to value steam coal, a finding of fact. The plaintiffs' administrative case brief is apparently devoid of the allegations they would raise here, *see* CDoc 89, and the answer to the question of whether they "had no opportunity to raise the issue before the agency" appears inarguable.

As above indicated, the claims that plaintiffs would raise at this point are factual in nature. *Cf. Franklin v. United States*, 289 F.3d 753, 757 (Fed. Cir. 2002) (while the scope and meaning of a tariff classification term is a question of law, determining whether goods fall within a particular tariff term as properly construed is a question of fact). Because Commerce, as the finder of fact, has not made a finding in regard to these arguments, further discussion would infringe upon Commerce's scope of expertise. *See F. LLI de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). Furthermore, defending Commerce's determination on a new allegation would necessarily appear to involve inappropriate *post hoc* rationalizations. *See Vinh Quang Fisheries Corp. v. United States*, 33 CIT 1277, 1282, 637 F. Supp. 2d 1352, 1358 (2009); *see also*, *e.g.*, *Fujian Lianfu Forestry Co. v. United States*, 33 CIT 1056, 1081, 638. F. Supp. 2d 1325, 1352 (2009). *Cf. Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992) (a "court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence").

*Conclusion*

In accordance with the foregoing, Commerce's *Final Results* must be sustained as supported by substantial evidence on the record and in accordance with law.  Judgment will enter accordingly.

/s/  R. Kenton Musgrave<br>R.  Kenton Musgrave, Senior Judge

Dated: September 21, 2016
       New York, New York